UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLINTON DIXON,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.;<br>MARCUS HARDY; DARRYL EDWARDS;<br>IMOTEP CARTER; MILTON JONES; and<br>RICARDO TEJEDA,<br><br>Defendants. | No. 12 C 5531<br><br>Judge Thomas M. Durkin |

# MEMORANDUM OPINION AND ORDER

Clinton Dixon is an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Menard Correctional Center in Illinois. In his amended complaint, he alleges that, while he was in custody at Stateville Correctional Center, IDOC staff and medical service providers were deliberately indifferent to his medical needs in violation of the Eighth Amendment (Counts I & II), and retaliated against him for filing this case (Counts III & IV). R. 75. Specifically, Dixon has sued Stateville's former Warden, Marcus Hardy; Stateville's former Assistant Warden, Darryl Edwards; correctional officer, Ricardo Tejeda; clothing room supervisor, Milton Jones; the IDOC's medical services provider, Wexford Health Sources, Inc.; and a doctor employed by Wexford, namely Imotep Carter, who served as Stateville's medical director. *See id.* Defendants have filed motions for summary judgment. R. 104; R. 109. The Court appointed counsel for Dixon, and

his counsel has prepared the amended complaint and papers opposing Defendants' motions. For the following reasons, Defendants' motions are granted in part and denied in part.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Dixon worked as a "cellhouse worker" in Stateville. R. 117 ¶ 10. Dixon requested gloves for his job, but was told that he would not be provided gloves because he did not work outside. *Id.* ¶ 12. As part of his duties, on August 4, 2011, Dixon was pushing a heavy cart when another cellhouse worker's chart pushed the cell house's door into Dixon's cart, and Dixon's middle finger was smashed between

the cart and the wall. *Id.* ¶ 10. The tip of his middle finger was severed. *Id.* Dixon claims that Stateville's failure to provide him with gloves caused his injury, and has sued Warden Hardy, Assistant Warden Edwards, and clothing room supervisor Jones, with regard to this claim.

After he injured his finger, Dixon was immediately treated by Dr. Carter at Stateville and then transferred to a private hospital, where his finger's condition was stabilized. R. 121 ¶¶ 9-13. Over the next six days, Dixon was examined several times by a hand specialist at the medical offices of Alan Chen Surgical Associates, namely Dr. Victor Tsai, and had two surgeries. *Id.* ¶¶ 14-27. Dr. Tsai was ultimately unable to re-attach the tip of his middle finger. *Id.* Dixon does *not* dispute that his finger healed adequately despite Dr. Tsai's inability to reattach the tip of his finger. Dixon also does *not* claim that he received inadequate medical care with respect to the efforts to repair and heal his finger.

Dixon alleges that he was given inadequate pain medication and was not provided necessary physical therapy, and has sued Warden Hardy, Assistant Warden Edwards, Dr. Carter, and Wexford with regard to these claims. At his initial hospital visit to treat his injury, Dixon was prescribed Norco, which is opioid pain medication. R. 121 ¶ 17. But when he returned to Stateville, Dixon was instead given Tramadol, a narcotic-like pain reliever with the brand name Ultram. R. 106-4 at 5. On August 5, 2011, Dr. Tsai prescribed Vicodin. R. 121 ¶ 22. But upon his return to Stateville, Dixon was again given Tramadol. *Id.* ¶ 23. Dixon saw Dr. Tsai again on August 9, 2011, but he was not prescribed any pain medication. *Id.* ¶ 25;

3

R. 121-9 at 16. After performing surgery on Dixon's finger on August 11, 2011, Dr. Tsai prescribed Tylenol #3, R. 121 ¶ 28, but Stateville provided Dixon with Motrin. R. 121-7 at 14. Stateville continued to provide Dixon with Tramadol through the date of his transfer to Menard on September 17, 2012. *See* R. 121 ¶¶ 30, 43, 47, 53, 60; R. 121-7 at 36; R. 106-4 at 64.

Dr. Carter referred Dixon for physical therapy on November 23, 2011. R. 121-7 at 36. Dr. Tsai also recommended physical therapy on December 8, 2011. R. 121 ¶ 58. Dixon testified that he never received physical therapy, and Defendants have not identified any evidence in the record to show that he did receive physical therapy. The parties dispute whether Dixon was ever instructed on how to do range of motion exercises on his own.

Dixon filed this action on July 13, 2012. Two months later on September 17, 2012, Dixon was transferred to Menard Correctional Center (which is 400 miles further away from his family) based on an investigation that revealed that Dixon had threatened another inmate saying, "I'm gonna bag and tag the b****." R. 111-1 at 101. Dixon contends that there was no basis for this investigation and that it was undertaken solely to create pretext for his transfer. *See* R. 116 at 6-7.

## Analysis

### I. Gloves

Dixon argues that Warden Hardy, Assistant Warden Edwards, and clothing room supervisor Jones were deliberately indifferent to Dixon's need to wear gloves to safely complete his duties as a cellhouse worker. "In the context of a conditions of

confinement claim . . . a convicted prisoner is entitled to be free from conditions that constitute cruel and unusual punishment" in violation of the Eighth Amendment. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). To be cruel and unusual, "the alleged condition must be objectively serious . . . and the defendant prison official must possess a sufficiently culpable state of mind." *Id.* "An adverse condition amounts to a constitutional deprivation when it results in the denial of a basic human need, such as adequate food, clothing, shelter, and medical care." *Id.* at 309-10; *see also Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) ("lack of heat, clothing, or sanitation"). To have a sufficiently culpable state of mind a defendant must have been deliberately indifferent to the condition posing a serious risk. *See Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013). Deliberate indifference "requires a showing that the [defendant] was aware of a substantial risk of serious injury to [the plaintiff] but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.*

Dixon has failed to demonstrate that performing his cellhouse duties without gloves was an objectively serious risk. Pushing a cart (even if it was large and heavy) around the prison is not objectively dangerous work. Notably, Dixon's injury was caused by a freak accident when another cart was pushed into a door which in turn caused Dixon's cart to smash his finger against a wall. Dixon has not argued, let alone presented evidence, that an accident such as this was foreseeable such that officials at Stateville should have taken additional precautions such as

5

equipping Dixon with gloves. Absent such foreseeability, Dixon performing his cellhouse duties without gloves is not an objectively serious condition.

Furthermore, even if such an accident was foreseeable, Dixon has presented no evidence that wearing cloves would have prevented his injury. Even work gloves are not so thick that they would protect a finger from injury when it is smashed between heavy and hard objects. If prison officials knew that carts pushed by cellhouse workers regularly crash, the solution is not gloves but better organization of the movement and use of the carts. Therefore, no reasonable jury could conclude that Defendants' failure to provide gloves was deliberately indifferent.

## II. Retaliation

Dixon also alleges that, in retaliation for his filing this case, Warden Hardy and Assistant Warden Edwards caused Officer Tejeda to create the Disciplinary Report that was the basis for Dixon's transfer. Dixon alleges that being housed in Menard as opposed to Stateville is a hardship for him because it is 400 miles further away from his family. Such a transfer can be actionable if it is done in retaliation for the exercise of a constitutionally protected right, like filing a civil action. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

Dixon has produced no evidence that his transfer was motivated by retaliatory intent. By contrast, Stateville's records show that Dixon was transferred based on an investigation into a threat he made against another inmate. Dixon contends that the timing of the investigation, coming shortly after he filed this case,

6

is a sufficient basis to send this claim to a jury. He is wrong. "[T]emporal proximity between a[] . . . protected activity and an adverse . . . action is rarely sufficient to show that the former caused the latter." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment *provided* that there is other evidence that supports the inference of a causal link." *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir. 2006) (emphasis added); *see also Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) ("A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity."); *Lumpkin v. Cook Cty. Pub. Def's Office*, 640 Fed. App'x 509, 512 (7th Cir. 2016) ("But 'suspicious timing' alone is rarely sufficient to infer causation."). Dixon has failed to provide any other evidence that Warden Hardy, Assistant Warden Edwards, and Officer Tejeda transferred him with a retaliatory motive. Thus, Defendant's motion for summary judgment on Dixon's retaliation claim is granted.

### III. Pain Medication & Physical Therapy

Dixon alleges that Dr. Carter, Wexford, Warden Hardy, and Assistant Warden Edwards, deliberately disregarded his need for certain pain medication and physical therapy. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim under this standard, a plaintiff must show (1) that the plaintiff suffered an objectively serious risk of harm, and (2)

7

that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Nevertheless, the "Constitution is not a medical code that mandates specific medical treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). And "evidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim." *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). Rather, "medical professionals . . . are entitled to deference in treatment decisions *unless* no minimally competent medical professional would have so responded under the circumstances at issue." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (emphasis added). In other words, "[w]hen a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*.

### A. Medication

Dixon alleges that Dr. Carter and Wexford were deliberately indifferent because they provided him with Tramadol instead of a narcotic pain medication. Dr. Tsai has passed away and was unavailable for a deposition in this case. Dr. Tsai's former colleague who took over his practice, Dr. Alan Chen was deposed. Dr. Chen testified that "generally" Tramadol would not be given to a patient with an amputated finger. R. 106-5 at 11 (37:21-24). He estimated that "98 percent of the

8

time, we do not" prescribe Tramadol in such circumstances, *id.* at 12 (38:1), and "Dixon clearly has a reason to require Norco." *Id.* (38:6-7). But he also noted that it is a "judgment call" and not a "big departure . . . from accepted professional standards" to substitute Tramadol for Norco in Dixon's case. *Id.* at 11 (37:24), 12 (38:8), 17 (59:11-21).

Dr. Chen's testimony is an insufficient basis for a reasonable jury to conclude that Dr. Carter's decision to prescribe Tramadol for Dixon's pain was a "substantial departure from accepted professional judgment." Notably, as Defendants point out, the Seventh Circuit has held that a prison doctor's decision to substitute a non-narcotic medication for a narcotic medication prescribed by a doctor outside the prison does not constitute deliberate indifference. *See Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) ("[The plaintiff] did not present any evidence to show that [the doctor's] decision not to prescribe Oxycontin was a substantial departure from accepted professional standards."); *see also Latham v. Mitcheff*, 2016 WL 3081932, at *2 (7th Cir. June 1, 2016) ("As for [the doctor's] suggestion that a switch to 'direct observation therapy' should be made before introducing another medication for [the plaintiff's] chest pain, [the plaintiff] does not point to any evidence suggesting that [the doctor] had failed to exercise medical judgment."). Defendants ensured that Dixon's pain was treated. It is not the Court's job to "second-guess" the manner in which his pain was treated absent evidence that no "minimally competent medical professional" would have made the same decision. *See Fitzgerald v. Greer,* 324 Fed. App'x 510, 515 (7th Cir. 2009). And here, Dr. Chen

9

testified that such a decision was a judgment call and did not fall below accepted professional standards. Thus, summary judgment is granted to Defendants on Dixon's claim regarding pain medication.

### B. Physical Therapy: Dr. Carter & Wexford

Defendants argue that Dr. Tsai taught Dixon how to do exercises with his finger such that physical therapy was not necessary. On this basis, Defendants argue that it was within Dr. Carter's professional judgment to decide that Dixon did not require physical therapy. There are several problems with this argument. One is that Dr. Carter referred Dixon for physical therapy, indicating that Dr. Carter made a judgment that Dixon required physical therapy. R. 121-7 at 36. Defendants cite to *Williams v. Fahim* in which the Seventh Circuit held that it was within a prison doctor's professional judgment to decide that an inmate could be trained to do range of motion exercises himself in lieu of physical therapy. 572 Fed. App'x 445, 446 (7th Cir. 2014). But if Dr. Carter and his staff determined that physical therapy was necessary then *Williams* is inapposite.

Further, the evidence shows that Dr. Carter and Wexford did not provide the materials necessary for Dixon to follow Dr. Tsai's instructions. As Dr. Tsai was not available to be deposed, Dr. Chen testified that it was Dr. Tsai's custom and practice to demonstrate such exercises to his patients. R. 106-5 at 17 (61:10-22). Dixon also testified that Dr. Tsai showed him home to do exercises, but that these exercises required him to squeeze a rubber ball, which Dr. Carter and Wexford failed to provide. R. 121-2 at 7-8 (24:8–25:6). Defendants have not produced any

10

records to contradict Dixon's testimony that he did not receive physical therapy. *Id.* at 13 (45:5-9). Thus, Wexford and Dr. Carter's motion for summary judgment on Dixon's claim that they were deliberately indifferent to his need for physical therapy is denied.

C.   **Physical Therapy: Warden Hardy & Assistant Warden Edwards**

Dixon also testified that he addressed grievances to Warden Hardy and Assistant Warden Edwards telling them that he had not received prescribed physical therapy. R. 121-2 at 20 (73:14-16). But the grievances in the record do not indicate that either Warden Hardy or Assistant Warden Edwards received them. *See* R. 118-8 at 10-11. Thus, the grievances are not evidence that either Warden Hardy or Assistant Warden Edwards had knowledge that Dixon was not receiving the physical therapy he had been prescribed.

Dixon also testified that he personally told Warden Hardy that he was not receiving physical therapy when Warden Hardy made rounds through the prison. R. 121-2 at 19-20 (72:17–73:10). (Dixon did not testify that he had a similar conversation with Assistant Warden Edwards.) Warden Hardy submitted a declaration that fails to address this allegation, and in any case the declaration is unsigned. R. 111-1 at 87-89. Dixon's testimony is sufficient evidence for a reasonable jury to find that Warden Hardy knew Dixon has been prescribed physical therapy, was not receiving it, and was deliberately indifferent to that information.

Warden Hardy argues that his lack of medical training absolves him of responsibility since Dixon was receiving the attention of medical professionals and he was entitled to rely on their judgment. The problem with that argument is that the evidence in the record indicates that Warden Hardy was aware that Dr. Carter had made a judgment that Dixon required physical therapy but Dixon was not receiving it. The relevant medical judgment had already been made, and Dixon was complaining about a lack of provision of services. Presumably, ensuring that such services are provided is part of a warden's responsibilities. Thus, Warden Hardy's motion for summary judgment on Dixon's claim of a failure to receive physical therapy is denied, but granted as to Assistant Warden Edwards.

## Conclusion

For the foregoing reasons, the motions for summary judgment, R. 109; R. 104, are granted in part and denied in part. Summary judgment is granted with respect to Count I (gloves) and Counts II and III (retaliation). Summary judgment is granted with respect to Count II in so far as it alleges deliberate indifference to Dixon's medication needs, and by Assistant Warden Edwards. Summary judgment is denied with respect to Count II is in so far as it alleges deliberate indifference with respect to Dixon's physical therapy. The remaining defendants in the case are Warden Hardy, Dr. Carter, and Wexford. A status hearing is set for October 14, 2016 to discuss how the parties would like to proceed and whether referral to a magistrate judge for settlement discussions would be helpful.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: September 30, 2016